Global Textile All., Inc. v. TDI Worldwide, LLC, 2018 NCBC 116.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7304

GLOBAL TEXTILE ALLIANCE, INC.,

Plaintiff,

v.

TDI WORLDWIDE, LLC, DOLVEN ENTERPRISES, INC., TIMOTHY DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc. and an officer and owner of TDI Worldwide, LLC; JAMES DOLAN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., STEVEN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., RYAN GRAVEN, individually and in his capacity as an officer, shareholder and director of Dolven Enterprises, Inc., GARRETT GRAVEN, individually, GFY INDUSTRIES LIMITED, GFY, LIMITADA de CAPITAL VARIABLE, GFY COOPERATIVE, U.A., and 上海冠沣源贸易有限公司 a/k/a GFY SH,

Defendants.

**ORDER AND OPINION ON DEFENDANTS GFY INDUSTRIES LIMITED, GFY, LIMITADA de CAPITAL VARIABLE, GFY COOPERATIVE, U.A. and GFY SH'S 12(b)(2) MOTION TO DISMISS SECOND AMENDED COMPLAINT AND PLAINTIFF'S MOTIONS TO STRIKE**

THIS MATTER comes before the Court on Defendants Ryan Graven, Dolven Enterprises, Inc., GFY Industries Limited, GFY, Limitada de Capital Variable, GFY Cooperative, U.A., and GFY SH's Motion to Dismiss Second Amended Complaint. (Defs.' Mot. Dismiss Sec. Am. Compl., ECF No. 288.)  The Motion to Dismiss Second Amended Complaint seeks dismissal of Defendants on two distinct grounds: (1) under North Carolina Rule of Civil Procedure 12(b)(2) (hereinafter "Rule") based on lack of personal jurisdiction over GFY Industries Limited, GFY, Limitada de Capital

Variable, GFY Cooperative, U.A., and GFY SH (collectively, "GFY Defendants"), and (2) under Rule 12(b)(6) for failure to state claims as to all Defendants.[1] Defendants sought, and the Court granted, leave for the GFY Defendants to separately file a brief in support of their 12(b)(2) motion to dismiss for lack of personal jurisdiction ("GFY Defendants' Motion"), and for all Defendants to file a single, consolidated brief in support of their 12(b)(6) motions to dismiss. (Order, ECF No. 163.) Accordingly, this Order and Opinion addresses only the GFY Defendants' Motion. The Defendants' motion to dismiss under Rule 12(b)(6) will be addressed in a separate order of this Court.

THE COURT, having considered the Motion, the briefs in support of and in opposition to the Motion, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part in the manner and for the reasons set forth below.

*Hagan Barrett & Langley PLLC, by J. Alexander S. Barrett and Kurt A. Seeber for Plaintiff Global Textile Alliance, Inc.*

*K&L Gates LLP, by A. Lee Hogewood III, John R. Gardner, and Matthew T. Houston for Defendants Dolven Enterprises, Inc., Ryan Graven, GFY Industries Limited, GFY Limitada de Capital Variable, GFY Cooperative, U.A., and GFY Shanghai.*

*Morningstar Law Group, by Shannon R. Joseph and Jeffrey L. Roether for Defendant Garrett Graven.*

---

[1] In connection with the GFY Defendants' Motion, Plaintiff filed two separate motions to strike various documents filed by GFY Defendants in support of their motion to dismiss. ("Motions to Strike"; ECF Nos. 304, 339.) GFY Defendants filed briefs in opposition to the Motions to Strike, (ECF Nos. 334, 349), and Plaintiff filed replies. (ECF Nos. 339, 350). The Court has thoroughly considered the Motions to Strike, and concludes, in its discretion, that they should be DENIED.

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Eric M. David, Brian C. Fork, and Shepard D. O'Connell for Defendant James Dolan.*

*James, McElroy & Diehl, P.A., by Fred B. Monroe and Jennifer M. Houti for Defendants TDI Worldwide, LLC and Timothy Dolan.*

*Ellis & Winters LLP, by Jonathan A. Berkelhammer, Steven A. Scoggan, and Scottie Forbes Lee for Defendant Steven Graven.*

McGuire, Judge.

1.     In considering a 12(b)(2) Motion, the Court makes its findings of fact based on a "review of [Plaintiff's Second Amended Complaint ("SAC")[2]], the parties' exhibits, the submitted depositions and affidavits, other appropriate evidence of record, and the arguments of counsel at the hearings on the 12(b)(2) Motion . . . ." *AYM Techs., LLC v. Rodgers,* 2018 NCBC LEXIS 14, at *7 (N.C. Super. Ct. Feb. 9, 2018). The Court accepts Plaintiff's allegations as true, to the extent they are uncontested by the affidavits and other evidence presented by Defendants. *See Herrera v. Charlotte Sch. of Law, LLC*, 2018 NCBC LEXIS 15, at *10 (N.C. Super. Ct. Feb. 14, 2018).

## I.     FINDINGS OF FACT AND PROCEDURAL BACKGROUND

2.     Plaintiff Global Textile Alliance, Inc. ("Plaintiff") is a North Carolina corporation with its principal place of business in Rockingham County, North Carolina. Plaintiff is in the business of providing fabrics, mattress ticking, covers,

---

[2] (Sec. Am. Compl., ECF No. 261.)

and other textiles to the bedding, upholstery, and home furnishings industries. (Sec. Am. Compl., ECF No. 261, at ¶ 1.)

3. Plaintiff was founded in 2001 by Luc Tack ("Tack"), a Belgian entrepreneur, and Defendants Timothy Dolan ("Timothy") and Steven Graven ("Steven") "for the purpose of providing fabric sourcing alternatives to furniture and bedding manufacturers in the United States." (*Id.* at ¶¶ 20–21.) Tack provided the funding to start Plaintiff, and Timothy incorporated Plaintiff and transferred all of its shares to Tack in the fall of 2001. (*Id.* at ¶ 21.) Since that time, Tack has been the sole shareholder of Plaintiff. (*Id.*) Until April 2016, Timothy served as Plaintiff's CEO and as a director, and Steven served as Plaintiff's Executive Vice President and as a director. (*Id.* at ¶¶ 4, 6.)

4. Defendant Ryan Graven ("Ryan") is a citizen and resident of North Carolina. (R. Graven Aff. ISO MTD, ECF No. 289.1, at ¶ 1.) Ryan is the son of Steven and a former employee of Plaintiff. (ECF No. 261, at ¶ 7.) Ryan served as the legal representative and head operating manager of Plaintiff's operations in China. (*Id.*) Ryan is also the founder, or one of the founders, of each of GFY Defendants. (ECF No. 289.1, at ¶ 3.)

5. Defendant Dolven Enterprises, Inc. ("Dolven") is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. (ECF No. 261, at ¶ 3; ECF No. 289.1, at ¶¶ 22–23.) Dolven is owned in equal twenty-five percent shares by Timothy, Steven, Ryan, and James Dolan ("James"). (ECF No. 261, at ¶ 3.) Ryan is the President and CEO of Dolven. (*Id.* at ¶ 7; ECF No. 289.1, at ¶ 2.)

Dolven is engaged in the business of sourcing fabrics, cutting and sewing fabrics, and providing other services in the bedding and fabric industries in direct competition with Plaintiff. (ECF No. 261, at ¶ 3.)

6. Defendant GFY Industries Limited ("GFY") is a Chinese company and has its principal place of business in Hong Kong, China. (*Id.* at ¶ 9; ECF No. 289.1, at ¶ 13.) Timothy, Steven, Ryan, and James founded GFY in 2009. (ECF No. 261, at ¶ 48.) Ryan serves as the director of GFY. (ECF No. 289.1, at ¶ 9.) GFY provides Plaintiff's customers with "a resource for cut-and-sew operations and supply chain management in China." (*Id.* at ¶ 14.) Plaintiff alleges that GFY is "managed and controlled by Dolven," (ECF No. 261, at ¶ 9), but GFY Defendants have produced evidence that GFY's day-to-day operations are managed by individual's residing in China. (ECF 289.1, at ¶¶ 10–11.) GFY Defendants also produced evidence that GFY does not purchase products in, deliver products to, provide services in, advertise in, pay taxes in, or otherwise have tangible assets in, North Carolina. (*Id.* at ¶¶ 15–21.) Plaintiff, however, claims GFY engaged in purchase and sale transactions with Plaintiff in North Carolina. (Kim Thompson Aff.; ECF No. 235.1. at ¶¶ 5–8.)

7. Defendant GFY Cooperative, U.A. ("GFY Coop") is a holding company that was formed in the Netherlands. (ECF No. 261, at ¶ 11; ECF No. 289.1, at ¶ 7.) Documents GFY Coop is required to file in the Netherlands list the company's principal place of business as 1317 Transport Drive, Raleigh, NC, 27603. (D. De Waard Aff., ECF No. 235.3, at ¶ 8.) Dolven is the majority shareholder in GFY Coop, and non-party R33183G, LLC is the minority shareholder. (ECF No. 289.1, at ¶¶ 5–

6.)  As a holding company, GFY Coop has no employees, no direct operating functions, and no clients or customers.  (*Id.* at ¶¶ 24–28.)  GFY Coop maintains a bank account in the United States, but has no tangible assets in North Carolina and does not pay taxes in North Carolina.  (*Id.* at ¶¶ 26, 30.)  GFY Coop is the sole shareholder of GFY.  (*Id.* at ¶ 8.)  Plaintiff alleges that GFY Coop is managed and controlled by Dolven.  (ECF No. 261, at ¶ 11.)

8.      Defendant GFY Limitada de Capital Variable ("GFY LCV") is an El Salvadoran company with its principal place of business in El Salvador.  (*Id.* at ¶ 10; ECF No. 289.1, at ¶¶ 32, 38.)  GFY LCV is owned 99.8% by GFY Coop and .02% by GFY.  (ECF No 289.1, at ¶ 31.)  GFY LCV has 125 employees, all of whom are based in El Salvador.  (*Id.* at ¶ 33.)  Although Plaintiff alleges that GFY LCV is managed and controlled by Dolven, (ECF No. 261, at ¶ 10), Defendants have presented evidence that GFY LCV has a general manager and other managers in El Salvador who are responsible for its day-to-day operations.  (ECF No. 289.1, at ¶¶ 34–36.)  GFY LCV has produced evidence that it does not have facilities, advertise, or pay taxes, in North Carolina.  (*Id.* at ¶¶ 37–40.)  Plaintiff claims GFY LCV has engaged in purchase and sale transactions with Plaintiff in North Carolina, (ECF No. 235.1. at ¶¶ 5–8), but GFY Defendants dispute this claim.  (ECF No. 289.1, at ¶ 37.)

9.      Defendant GFY SH ("GFY Shanghai") is a Chinese Company registered and located in Shanghai, China and is 100% owned by GFY.  (ECF No. 289.1, at ¶ 42.)  GFY Shanghai has 15 employees, all based in China.  (*Id.* at ¶ 48.)  Plaintiff alleges that GFY is "controlled and managed by Dolven," (ECF No. 261, at ¶ 12), GFY

Defendants produced evidence that the day-to-day operations of GFY Shanghai are managed from China by a General Manager and other employees. (ECF No. 289.1, at ¶¶ 44–45.) GFY Shanghai does not have tangible assets or pay taxes in North Carolina. (*Id.* at ¶¶ 47–53.)

10. Plaintiff uses third-party vendors to provide certain products and services integral to its manufacturing of its products. Plaintiff contracts with third-party fabric mills to manufacture some of its fabrics. Plaintiff also contracts with "cut-and-sew" operations to further process the fabric that Plaintiff manufactures into final products for its customers. Plaintiff uses an "extremely selective" process to identify qualified third parties, a process that requires significant amounts of time and money. (ECF No. 261, at ¶ 29.) The third-party fabric mills and cut-and-sew operations are located primarily in China.

11. In or around 2005, Plaintiff hired Ryan to set up an office in China and to oversee all of Plaintiff's business in Asia. (*Id.* at ¶¶ 34–35.) Plaintiff initially did its sourcing in China through a Wholly Owned Foreign Enterprise ("WOFE") named Paradise, which was and is owned by Luc Tack. (*Id.* at ¶ 36.) In 2010, Plaintiff created Guanteng ("GTA Asia"), another WOFE, to conduct business on its behalf in Asia. (*Id.* at ¶ 36.) Ryan was named Director of GTA Asia. (*Id.*) Through GTA Asia, Plaintiff invested "significant amounts of time and money" to identify, select, and develop relationships with Chinese vendors capable of providing high-quality, reliable products and services for Plaintiff. (*Id.* at ¶¶ 40–41.)

12. Ryan's primary job functions for Plaintiff were "to locate factories in China that could produce fabric for [Plaintiff], to manage the quality of the fabric produced for [Plaintiff] in those factories, to ensure that fabric produced at those factories for [Plaintiff] was delivered properly, and to provide general customer service for [Plaintiff's] operations in China." (Graven Prel. Inj. Aff., ECF No. 61.1, at ¶ 3.) Ryan worked on Plaintiff's behalf in Asia until 2012, when Ryan's brother, Garrett Graven ("Garrett"), replaced Ryan as Director of GTA Asia. (ECF No. 261, at ¶ 38.) Ryan, however, maintained employment with Plaintiff and continued overseeing various individuals who filled the role of legal representative and Director of GTA Asia. (*Id.*)

13. Through their positions with Plaintiff, Timothy, Ryan, Garrett and others gained extensive and detailed knowledge about all aspects of Plaintiff's Asia operations and about the capabilities of Plaintiff's vendors. (*Id.* at ¶ 44.) Plaintiff alleges that they leveraged this knowledge to form the GFY Defendants to compete with and usurp business opportunities from Plaintiff. (*Id.* at ¶¶ 125–32.)

14. On or about May 4, 2009, Timothy, Steven, Ryan, and James founded GFY using Plaintiff's offices, employees, capital, and other assets. (*Id.* at ¶ 48.) Ryan stated that GFY was founded to "manage the sourcing, quality and servicing of [cut-and-sew] products." (*Id.* at ¶ 50.) Steven stated that the creation of GFY was facilitated by "experiences [Ryan] gained in China" and that GFY was created for the purpose of having one company "manage cut-and sew facilities, operations, logistics, quality control, and product in-flow and out flow." (*Id.*)

15. Plaintiff alleges that GFY "went into direct competition" with Plaintiff. (*Id.* at ¶ 51.) GFY purchased fabric from Plaintiff, which GFY would then send to third-party cut-and-sew vendors to make products for Plaintiff's customers. (*Id.* at ¶ 65.) Plaintiff alleges that "[t]here was no reason that [Plaintiff] could not have directly sourced its fabrics to the third-party cut and sew operators, as it had done for many years." (*Id.*) Timothy, Steven, Ryan and James did not disclose the creation of, or their ownership interests in, GFY to Tack. (*Id.* at ¶ 68.)

16. In August of 2013, Timothy, Steven, Ryan, and James created Dolven, each owning a twenty-five percent interest in Dolven. (*Id.* at ¶ 77.) Dolven "is engaged in sourcing fabrics, cutting and sewing of fabrics, and providing other services in the bedding and fabric industries." (*Id.* at ¶ 3.) Dolven owns, manages, and controls GFY. (*Id.* at ¶ 9.) Plaintiff alleges that Dolven was created using Plaintiff's resources to divert business from Plaintiff to Dolven. (*Id.* at ¶ 77.)

17. Plaintiff further alleges that Timothy, Steven, Ryan, and James created GFY LCV, GFY Shanghai, and GFY Coop in early 2014 to facilitate the diversion of corporate opportunities by Dolven away from GTA. (*Id.* at ¶ 82.)

18. According to Plaintiff, Timothy, Steven, Ryan, and Garrett used their employment with Plaintiff and Plaintiff's resources to benefit the business interests of Dolven and the GFY Defendants without disclosing to Plaintiff their ownership interests in Dolven or the GFY Defendants. (*Id.* at ¶ 84.) For instance, Plaintiff alleges that Timothy, Steven, Ryan, and Garett gave preferential treatment to Dolven and the GFY Defendants in transactions with Plaintiff and usurped opportunities

belonging to Plaintiff in favor of Dolven and the GFY Defendants. (*Id.* at ¶¶ 85–99.) As a result of this alleged misconduct, Plaintiff claims it has suffered damage to its relationships with its customers and suppliers and has lost business opportunities, which rightfully belonged to it. (*Id.* at ¶¶ 98, 103.)

19. Plaintiff initiated this lawsuit by filing a Verified Complaint on August 15, 2017. (ECF No. 4.)

20. On September 26, 2017, GFY Defendants made a special limited appearance before the Court "for the purpose of filing a motion to dismiss or otherwise contesting the Court's jurisdiction over [GFY Defendants]" and did "not consent or submit to the jurisdiction of this Court." (Notice of Limited Special Appearance, ECF No. 43.)

21. On April 11, 2018, Plaintiff filed the SAC. In the SAC, Plaintiff makes the following claims against GFY Defendants: actual and constructive fraud (Third Claim for Relief); common law unfair competition/business conversion (Sixth Claim for Relief); unfair and deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA") (hereinafter, the North Carolina General Statutes will be referred to as "G.S.") (Seventh Claim for Relief); constructive trust (Tenth Claim for Relief); fraudulent transfer under G.S. § 39-23.1, *et seq.* (Eleventh Claim for Relief); and a motion for preliminary and permanent injunction (Twelfth Claim for Relief).

22. On May 14, 2018, Defendants filed the GFY Defendants' Motion and a brief in support of the Motion. (Br. Supp. GFY Defs.' Mot. Dismiss, ECF No. 289.)

On June 8, 2018, Plaintiff filed its brief in opposition to the GFY Defendants' Motion. (Pl.'s Br. Opp. 12(b)(2) Mot. Dismiss, ECF No. 318.) Defendants filed their reply brief in support of the GFY Defendants' Motion on June 21, 2018. (ECF No. 329.) The Court held a hearing on the GFY Defendants' Motion, and it is now ripe for resolution.

## I. ANALYSIS

### A. Standard of Review

23. "[T]he plaintiff bears the burden of proving, by a preponderance of the evidence, grounds for exercising personal jurisdiction over a defendant. . . . [U]pon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making out a *prima facie* case that jurisdiction exists." *Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010) (internal citation omitted). When a defendant supports his motion to dismiss for lack of personal jurisdiction with affidavits, the plaintiff cannot rest on the unverified allegations in the complaint; rather, the plaintiff must respond by affidavit or otherwise, setting forth specific facts showing that the court has personal jurisdiction. *Id.* at 68−69, 698 S.E.2d at 761; *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). "An unverified complaint is not an affidavit or other evidence." *Hill v. Hill*, 11 N.C. App. 1, 10, 180 S.E.2d 424, 430 (1971). When a defendant supports his motion with affidavits and the plaintiff does not offer opposing evidence, the court considers the uncontroverted allegations in the complaint and all facts in the defendant's affidavits in determining whether the court has personal jurisdiction. *Banc of Am. Sec. LLC*, 169 N.C. App. at 693−94, 611 S.E.2d at 182−83;

*see also Weisman v. Blue Mt. Organics Distrib.*, 2014 NCBC LEXIS 41, at *2 (N.C. Super. Ct. Sept. 5, 2014) (noting that "allegations in a complaint uncontroverted by an affidavit are still taken as true"). But, where the parties submit conflicting affidavits, the Court "must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (citations and quotations omitted).

24. In North Carolina, a court has jurisdiction over a nonresident defendant if (i) statutory authority for the exercise of jurisdiction under the State's long-arm statute, G.S. § 1-75.4, exists and (ii) the nonresident defendant has sufficient contacts with the State "such that the exercise of jurisdiction does not violate the federal due process clause." *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 614–15, 532 S.E.2d 215, 217 (2000). North Carolina's long-arm statute allows courts to assert personal jurisdiction to "the full extent permitted by the Due Process Clause of the United States Constitution." *Cambridge Homes of N.C., L.P. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 412, 670 S.E.2d 290, 295 (2008) (citations and quotations omitted). Thus, the Court need not always consider the long-arm statute in its analysis because "the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts necessary to meet the requirements of due process." *Id.* (citations and quotations omitted).

25. For a court to exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted); *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006). The defendant must purposefully avail himself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of the forum state's laws. *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986). In determining whether a defendant has sufficient minimum contacts, North Carolina courts consider "(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) the convenience to the parties." *Banc of Am. Sec. LLC*, 169 N.C. App. at 696, 611 S.E.2d at 184.

26. The "relationship between the defendant and the forum must be 'such that he should reasonably anticipate being haled into court there.'" *Tom Togs, Inc.*, at 365−66, 348 S.E.2d at 786 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Unilateral activity within the forum state by others who have some relationship with a non-resident defendant is insufficient. *Banc of Am. Sec. LLC*, 169 N.C. App. at 695, 611 S.E.2d at 184. "Each defendant's contacts with the forum State must be assessed individually." *Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 638, 652 S.E.2d 389, 394 (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

27. There are two bases for finding sufficient minimum contacts: (1) general jurisdiction and (2) specific jurisdiction. General jurisdiction may be asserted over a defendant "even if the cause of action is unrelated to [the] defendant's activities in

the forum as long as there are sufficient 'continuous and systematic' contacts between [the] defendant and the forum state." *Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 145, 515 S.E.2d 46, 51 (1999). The contacts should "render [the defendant] essentially at home in the forum state." *Worley v. Moore*, 2017 NCBC LEXIS 15, at *54 (N.C. Super. Ct. Feb. 28, 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). A court should evaluate all contacts with the forum that occurred during the relevant time period, based on the totality of the circumstances and the facts of each case. *See Sea-Roy Corp. v. Parts R Parts, Inc.*, 1:94CV00059, 1995 U.S. Dist. LEXIS 21859, at *34–35 (M.D.N.C. Aug. 16, 1995); *Stetser v. TAP Pharm. Prods.*, 162 N.C. App. 518, 522–23, 591 S.E.2d 572, 576 (2004).

28. By contrast, "[s]pecific jurisdiction exists when the controversy arises out of the defendant's contacts with the forum state." *Lab. Corp. of Am. Holdings v. Caccuro*, 212 N.C. App. 564, 569, 712 S.E.2d 696, 701 (2011) (citations and quotations omitted). The contacts must not be "passive" or based solely on "random, fortuitous, or unilateral activity of another party or a third person." *Cambridge Homes of N.C. L.P.*, 194 N.C. App. at 413, 670 S.E.2d at 296. Instead, the contacts should form "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (quotations omitted). The defendant must also have "'fair warning' that he may be sued in a state for injuries arising from activities that he

'purposefully directed' toward that state's residents." *Tom Togs, Inc.*, 318 N.C. at 366, 348 S.E.2d at 786.

29. In support of the Motion, GFY Defendants argue that they are foreign entities with their principal places of business outside of the United States that lack sufficient minimum contacts with North Carolina to allow this Court to exercise jurisdiction over them. (ECF No. 289, at p. 6.) In response, Plaintiff makes several arguments. Unfortunately, Plaintiff's briefing and oral arguments in opposition to the Motion have left the Court somewhat confused as to the legal basis for some of Plaintiff's positions. Plaintiff's overarching contention seems to be that because Ryan and Dolven are North Carolina residents, have ownership interests in or other connections to the GFY Defendants, and allegedly control the GFY Defendants, the GFY Defendants should all be subject to jurisdiction in North Carolina. The Court and GFY Defendants construe this argument as based on a type of "veil piercing" theory (ECF No. 329, p. 1); that Ryan and Dolven exert such control over the GFY Defendants that they have no separate existence of their own. However, at the hearing, Plaintiff's counsel denied that Plaintiff was making a veil piercing argument, but was unable to articulate to the Court's understanding the actual basis of their argument. Nevertheless, the Court will address what it interprets as Plaintiff's arguments for personal jurisdiction over the GFY Defendants.

30. In construing Plaintiff's briefing and oral argument, the Court has identified the following as the contentions presented by Plaintiff: (1) that a filing made by Dolven in this case constituted a general appearance by GFY and GFY LCV

and waived their rights to challenge personal jurisdiction (ECF No. 318, at pp. 2–4); (2) that corporate documents filed by GFY Coop in the Netherlands and the United States establish that GFY Coop's principal place of business is in North Carolina (*Id.* at pp. 8, 11); (3) that alleged purchase and sales transactions between GFY Defendants and Plaintiff provide the Court with jurisdiction over GFY Defendants (Id. at pp. 18–20); and (4) that Ryan and Dolven's management and control of GFY Defendants from North Carolina gives rise to jurisdiction over GFY Defendants. (*Id. passim.*) The Court will address each argument in turn.

B. <u>GFY Defendants Did Not Waive Their Rights to Contest Personal Jurisdiction</u>.

31. Plaintiff first argues that certain allegations made by Dolven in counterclaims that Dolven filed in this lawsuit constitute a general appearance by GFY and GFY LCV and a waiver of their rights to contest personal jurisdiction. (ECF No. 318, at pp. 2–3.) Plaintiff cites no authority in support of this contention. The Court disagrees with Plaintiff's argument.

32. "A general appearance is one whereby the defendant submits his person to the jurisdiction of the court by invoking the judgment of the court in any manner on any question other than that of the jurisdiction of the court over his person." *Judkins v. Judkins*, 113 N.C. App. 734, 737, 441 S.E.2d 139, 140 (1994) (citations and quotations omitted). GFY and GFY LCV have made only limited special appearances in this matter for the purpose of contesting personal jurisdiction, and have not invoked this Court's jurisdiction. Contrary to Plaintiff's argument, allegations in Dolven's pleadings filed with this Court cannot be used as admissions against co-

defendants GFY nor GFY LCV. "Admissions in the answer of one defendant are not competent evidence against a codefendant" in deciding whether personal jurisdiction exists. *Cambridge Homes of N.C. L.P.*, 194 N.C. App. at 418, 670 S.E.2d at 299; *see also Barclays American v. Haywood,* 65 N.C. App. 387, 389, 308 S.E.2d 921, 923 (1983) (stating that "[f]acts admitted by one defendant are not binding on a co-defendant"). Therefore, admissions made by Dolven in its answer and counterclaims cannot constitute a general appearance and waiver of GFY's and GFY LCV's rights to assert lack of personal jurisdiction. The Court concludes that no waiver occurred and that GFY and GFY LCV have not voluntarily submitted to the Court's jurisdiction.

C. <u>The Evidence Before the Court Establishes that GFY Coop's Principal Place of Business is in Raleigh, North Carolina</u>.

33. The Court next interprets Plaintiff's briefing as arguing that GFY Coop's principal place of business is in North Carolina.[3] (ECF No. 318, at pp. 7–10.) Plaintiff contends that corporate filings made by GFY Coop list its principal place of business as 1317 Transport Drive, Raleigh, North Carolina. (ECF No. 235.3, at 4–8; Corporate Documents, ECF No. 305.3, at pp. 1–10.). GFY Coop, however, claims that its principal place of business is in the Netherlands. (ECF No. 289.1, at ¶ 27.)

---

[3] The Court does not read Plaintiff's briefing or oral arguments as challenging Defendants' averments that GFY, GFY LCV, or GFY Shanghai are foreign entities with their principal places of business outside of the United States. In fact, Plaintiff admits in its SAC that GFY and GFY LCV are foreign entities that have their principal places of business in Hong Kong and El Salvador, respectively. (ECF No. 261, at ¶¶ 9, 10.) Plaintiff also recognizes that GFY Shanghai is a Chinese company with operations in China and does not otherwise challenge that its principal place of business is in China. (*Id.* at ¶ 11; *see generally* ECF No. 318.)

34.     For "a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler*, 571 U.S. at 137. The principal place of business is the corporation's nerve center, *i.e.* "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d. 1029, 1041 (2010). In determining the location of a defendant's principal place of business, courts are directed to ignore jurisdictional manipulation and to focus on "the place of actual direction, control, and coordination." *Id.* at 97.

35.     The evidence before the Court demonstrates that GFY Coop made a filing with the Chamber of Commerce in the Netherlands that "indicates GFY Coop's principal place of business is . . . [in] Raleigh, North Carolina" and that "[Dolven] is a director of GFY Coop." (ECF No. 235.3, at ¶¶ 8, 10.) The filing states that Dolven and GFY Coop share the same address. (*Id.*) GFY Coop also has filed documents with the United States Internal Revenue Service that list the same Raleigh, North Carolina address as GFY Coop's mailing address and list Ryan as director of GFY Coop. (ECF No. 305.3, at pp. 1–2.) Furthermore, other corporate tax documents prepared by GFY Coop's accountants in the Netherlands were sent "to the Board of Directors of [GFY Coop]" and listed the Transport Drive address in Raleigh, North Carolina as the address for GFY Coop's Board of Directors. (*Id.* at p. 6.) The only evidence GFY Defendants have presented to the Court in support of its position that GFY Coop's principal place of business is in the Netherlands is the affidavit of Ryan stating as much.

36.     Based on the weight of the evidence currently before the Court, the Court finds that GFY Coop's principal place of business is in North Carolina and concludes that this Court may exercise general jurisdiction over GFY Coop. Although Ryan submitted an affidavit on behalf of GFY Coop stating that GFY Coop's principal place of business is in the Netherlands, GFY Coop has not provided any other evidence in support of that position. On the other hand, GFY Coop's own official filings list Raleigh, North Carolina as its principal place of business and mailing address. This is significant because GFY Coop is a holding company with no employees, management or otherwise, in the Netherlands and there is no evidence GFY Coop has any offices in the Netherlands. Instead, the evidence indicates that Dolven and Ryan are directors of GFY Coop and that GFY Coop is directed/managed from Dolven's office in North Carolina. The Court concludes that GFY Coop's principal place of business is in North Carolina and GFY Coop is subject to general jurisdiction in North Carolina.

37.     Therefore, this Court has personal jurisdiction over GFY Coop and concludes that GFY Defendants' motion to dismiss the claims against GFY Coop for lack of personal jurisdiction should be DENIED.

D.     <u>GFY Defendants' Purchases from and Sales to Plaintiff in North Carolina</u>

38.     It is uncontroverted that GFY, GFY LCV, and GFY Shanghai are non-resident entities. Nevertheless, Plaintiff contends that certain purchase and sale transactions between Plaintiff and GFY Defendants provide a basis for this Court to exercise both general and specific jurisdiction over GFY Defendants. For example,

Plaintiff argues that GFY purchased "tens of millions of dollars' worth of fabric" over several years and that the sales were "consummated" at Plaintiff's office in Reidsville, North Carolina, creating a "systematic and continuous" connection with North Carolina that justifies a grant of general jurisdiction. (ECF No. 318, at pp. 20–21.) Plaintiff also argues that it "sold tens of millions of dollars of fabric, mattress covers, and mattress cover re-work to GFY . . . and purchased tens of millions of dollars in mattress covers and fabric from GFY," which "shows that the GFY entities purposefully engaged in activities in, to, and through North Carolina subjecting them to [specific] jurisdiction in North Carolina." (ECF No. 318, at p. 20.) Defendants argue that the transactions at issue occurred in other jurisdictions and that Plaintiff has not established that the transactions relate to the current dispute. (Defs.' Reply Br., ECF No. 329, at pp. 5–8.)

39. The specific purchase and sale transactions[4] (the "transactions") to which Plaintiff points in support of its argument are transactions between (1) Plaintiff and GFY, and (2) Plaintiff and GFY LCV. The transactions include: (1) GTA's sale of approximately $17,900,000 of fabric and $440,000 of mattress covers to GFY between November 2013 and July 2017, shipment terms F.O.B.[5] China; (2) GFY's sale of over $34,000,000 of mattress covers and over $17,500,000 of fabrics to

[4] To the extent Plaintiff relies on general allegations that GFY Defendants transacted business in North Carolina, the Court finds such conclusory allegations insufficient to support an exercise of jurisdiction over GFY Defendants.

[5] The shipment term F.O.B. means "free on board" and refers to the place where the risk and expense associated with a sale transfers from seller to buyer. G.S. § 25-2-319; *Peed v. Burleson's Inc.*, 244 N.C. 437, 439–440 (1956) ("Where the contract of sale provides for a sale f.o.b. the point of shipment, the title is generally held to pass . . . at the time of the delivery of goods for shipment at the point designated.").

GTA between 2013 and 2017, shipment terms F.O.B. China; (3) GTA's mattress cover re-work sales to GFY totaling upwards of $940,000, shipment terms F.O.B. Reidsville; (4) GTA's sales of approximately $1,475,000 of sourced fabric to GFY LCV, shipment terms F.O.B. China; (5) GTA sales of approximately $8,399,000 of fabric to GFY LCV, shipment terms F.O.B. Reidsville; and (6) GTA's purchases of approximately $6,665 of fabric from GFY LCV, shipment terms F.O.B. El Salvador. (ECF No. 235.1, at ¶ 5–8.)

40. GFY Defendants contend, and have provided evidence, that the mattress cover re-work sales described above were not made to GFY, but instead involved Plaintiff's fabric produced by suppliers other than GFY Defendants, which were imported by Dolven and paid for by someone other than GFY Defendants. (ECF 329.2, at ¶¶ 5–13.) GFY Defendants also have submitted affidavit evidence stating that "GFY Defendants do not ship goods or other products to North Carolina or elsewhere within the United States. Rather, when any GFY Defendants sell any goods or products, the purchasers, including Dolven, arrange for pick[-]up of such products outside the United States or otherwise arrange for third-party delivery and import by entities unassociated with GFY Defendants." (ECF 289.1, at ¶ 55.)

> a. *GFY Defendants' purchases from and sales to Plaintiff in North Carolina are not sufficient to confer general jurisdiction*

41. Plaintiff first argues that the sales listed above allow this Court to exercise general jurisdiction over GFY Defendants. (ECF No. 318, at pp. 17–20.) As a preliminary matter, Plaintiff has not provided any evidence of any sales or purchase transactions between Plaintiff and GFY Shanghai, and Plaintiff has failed to

establish that the Court has general personal jurisdiction over GFY Shanghai based on any such transactions.

42.     A court may assert general jurisdiction over foreign corporations "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (citations and quotations omitted).  The United States Supreme Court and North Carolina courts have recognized that this is an exacting standard.

43.     In *Daimler*, the Supreme Court reviewed the Ninth Circuit's decision to grant general jurisdiction over defendant Daimler based on the contacts of Daimler's alleged agent, Mercedes Benz USA ("MBUSA"), in California.  MBUSA was the largest supplier of luxury cars to California and its sales in California accounted for 2.4% of Daimler's worldwide sales.  *Id.* at 123.  However, the Supreme Court held that the Ninth Circuit erred in exercising general jurisdiction over defendant Daimler because, even if the Court imputed to Daimler the California contacts and sales of Daimler's alleged agent MBUSA, Daimler was not "at home" in California.  *Id.* at 136–39.  Notably, the Court reasoned that granting general jurisdiction based on the fact that a non-resident defendant had substantial sales in a jurisdiction would make non-resident defendants amenable to suit in every jurisdiction in which their sales were sizeable, and would scarcely allow out of state defendants to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *Id.* at 139 (citations and quotations omitted).

Such reasoning is directly on point in this case to the extent Plaintiff argues that GFY Defendants' sizeable sales with Plaintiff should subject them to general jurisdiction.

44.     In *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408 (2011), the Court reviewed whether Texas courts erred in exercising general jurisdiction over a non-resident defendant company against whom the plaintiff brought a wrongful death claim arising from activities in Peru. *Id.* at 409–11. The Court framed the general jurisdiction analysis as "whether [the contacts of defendant] constitute the kind of continuous and systematic general business contacts the Court [has previously recognized as sufficient in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952)]."[6] *Id.* at 416. The defendants' contacts with Texas were comprised of (1) a negotiation session in Houston involving Defendant's CEO; (2) purchases of helicopters, spare parts, and other accessories worth over $4 million from a company in Texas; (3) pilot training in Texas; (4) personnel visits to Texas; and (5) receipt of over $5 million in payments from Texas bank accounts. *Id.* at 410–11. The Texas Supreme Court focused on the purchases and training trips in granting general jurisdiction. *Id.* at 417. The U.S. Supreme Court, however, concluded that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Id.* at 418. In other words, even

[6] In *Perkins*, the Court held an Ohio court properly exercised general jurisdiction over a foreign corporation whose president and general manager maintained an office in Ohio and held directors' meetings, carried on correspondence relating to the business, distributed salary checks, and otherwise directed company affairs from that office.

significant purchase transactions in Texas were insufficient to give rise to general jurisdiction over the defendant.

45. Likewise, North Carolina courts, including this Court, have refused to exercise general jurisdiction over a non-resident defendant based on evidence that it does significant business in the State of North Carolina, unless evidence is presented that the nature or amount of the business would render the defendant at home in North Carolina. *See e.g., Occidental Fire & Cas. Co. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 689 F. Supp. 564, 568 & n.1 (E.D.N.C. 1988) (finding no general jurisdiction even though the non-resident defendant's loan activity in the forum state exceeded $100 million); *Ash v. Burnham Corp.*, 80 N.C. App. 459, 461–62, 343 S.E.2d 2, 3–4 (1986) (holding that the defendant's sales to North Carolina customers, comprising 0.5% of its total annual sales, was insufficient to support jurisdiction); *Weisman*, 2014 NCBC LEXIS 41, at *12 (evidence that defendant-company "received only 3.6% of its total sales volume from North Carolina" was "insufficient to support general jurisdiction"). Indeed, this Court recently noted that the Business Court "and the North Carolina appellate courts have yet to find a sufficiently 'exceptional case' after *Daimler* to extend general jurisdiction to a corporation or a limited liability company in North Carolina that has neither organized itself in this State nor located its principal place of business here." *AYM Techs., LLC.*, 2018 NCBC LEXIS 14, at *19.

46. After reviewing the evidence and the relevant authority, the Court concludes that it does not have general jurisdiction over GFY or GFY LCV. First, Plaintiff has provided no context for the sales and purchase figures it supplies from

which the Court could conclude whether the volume of GFY and GFY LCV's transactions with Plaintiff constituted a significant portion of their sales for the periods in question, nor what percentage of Plaintiff's purchases and sales the transactions constituted. Second, all but a small percentage of the transactions between Plaintiff and GFY are "F.O.B. China", and some of the transactions between Plaintiff and GFY LCV are "F.O.B. China" or "F.O.B. El Salvador." Therefore, a substantial portion of the transactions upon which Plaintiff relies can be interpreted as having been consummated in China or El Salvador and not in North Carolina. *See Pyrotek, Inc. v. Motionmaster, Inc.*, No. 1:04CV00549, 2006 U.S. Dist. LEXIS 57007, at *12 (M.D.N.C. Feb. 22, 2006) (finding ,where plaintiff sought recovery for faulty equipment it purchased from defendant, "[defendant]'s agreement to manufacture the Equipment and send it [to plaintiff] 'F.O.B. Vista, California' [was] likely not sufficient to give rise to jurisdiction in North Carolina"); *see also Golden Belt Mfg. Co. v. Janler Plastic Mold Corp.*, 281 F. Supp. 368 (M.D.N.C. 1967), *aff'd*, 391 F.2d 266 (4th Cir. 1968) (holding that exercising personal jurisdiction over the defendant in North Carolina would offend due process where a contract was initiated by the plaintiff for defendant, a Chicago plastic mold manufacturer, to ship molds to North Carolina, F.O.B. Chicago); *see also Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 494 (E.D.Va. 2003) ("[Defendant]'s F[.]O[.]B[.] delivery of cigarettes to a common carrier in . . . North Carolina for transport into Virginia diminishes the jurisdictional significance of such shipments. . . . [and] does not show that [defendant] transacted business in [Virginia].").

*b. GFY's and GFY LCV's contacts with North Carolina are not sufficient to confer specific jurisdiction on the Court*

47.     Plaintiff also argues that the transactions between itself and GFY, and between itself and GFY LCV, support specific jurisdiction. "North Carolina exercises specific jurisdiction over a party when it exercises personal jurisdiction in a suit arising out of that party's contacts within the state." *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 114, 516 S.E.2d 647, 650 (1999). "The alleged injuries must arise out of activities defendants 'purposefully directed' toward the state's residents." *Stetser*, 162 N.C. App at 521, 591 S.E.2d at 575 (quoting *Tom Togs, Inc.,* 318 N.C. at 366, 348 S.E.2d at 786). In analyzing whether the sales transactions between Plaintiff and GFY and Plaintiff and GFY LCV permit the exercise of specific personal jurisdiction over GFY or GFY LCV the Court considers: "(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action to the contacts, (4) the interest of the forum state, and (5) the convenience to the parties." *Banc of Am. Sec. LLC*, 169 N.C. App. at 696, 611 S.E.2d at 184.

48.     Plaintiff makes only conclusory allegations and arguments in support of its position that GFY's and GFY LCV's purchases and sales transactions with Plaintiff provide a basis for specific jurisdiction. (ECF No. 318, at pp. 18–20.) For example, Plaintiff claims that "[a]ll of [the GFY Defendants'] sales and purchases and the manner in which they were obtained and achieved are the subject of GTA's lawsuit against the GFY entities." (*Id*. at p. 18.) The Court already has concluded, the GFY Defendants' transactional contacts with North Carolina are not sufficient to

confer general jurisdiction. In addition, while North Carolina has an interest in providing a forum for its residents to seek redress for injuries they suffer, Plaintiff has not identified any other particular State interests implicated by the discreet transactions at issue here. Most importantly, however, Plaintiffs do not allege that the GFY Defendants directed conduct towards North Carolina from which their claims in this lawsuit arise. *Tom Togs, Inc.*, 318 N.C. at 365–66, 348 S.E.2d at 786 (The "relationship between the defendant and the forum must be such that he should reasonably anticipate being haled into court there" (internal quotation marks omitted). Rather, Plaintiffs contend that the GFY Defendants' transactions have a connection to North Carolina because they are the result of the alleged wrongdoing by the individual defendants or Dolven, and since the Court has personal jurisdiction over those parties it should exercise personal jurisdiction over the GFY Defendants. The Court does not find Plaintiff's argument persuasive, and concludes that Plaintiff has failed to carry its burden of establishing that the Court should exercise personal jurisdiction over GFY and GFY LCV based on alleged contacts arising from the sales transactions between those companies and Plaintiff. *Id.* at 365, 348 S.E.2d at 786. ("[T]he unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice" to confer specific jurisdiction.).

E.   Dolven and Ryan's Management and Control of GFY Defendants

49.   Finally, the Court addresses Plaintiff's overarching contention: that the Court should exercise personal jurisdiction over GFY Defendants because the GFY

Defendants are mere instrumentalities of Dolven "created . . . to facilitate the diversion of corporate opportunities by Dolven away from" Plaintiff, and the GFY Defendants are "controlled and managed" by Dolven and Ryan from North Carolina. (ECF No. 261, at ¶¶ 9–12, 82; ECF No. 318, at pp. 12, 14.) Despite Plaintiff's protestations, the Court views this as a veil-piercing theory.

50. This Court will disregard an entity's corporate form only if the corporation is so operated as to be "a mere instrumentality or alter ego of the sole or dominant shareholder." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 440–41, 666 S.E.2d 107, 113–14, (2008) (citations and quotations omitted). To show that a subsidiary is a mere instrument of a parent corporation or an individual, a plaintiff must present evidence of:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [a] plaintiff's legal rights; and,
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Green v. Freeman*, 367 N.C. 136, 145–46, 749 S.E.2d 262, 270 (2013) (quoting *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)). Courts have relied on the following types of evidence to justify piercing the corporate veil: "inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate

identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records." *Id.* at 145, 749 S.E.2d at 270. In the absence of such supporting evidence, however, courts will not pierce the corporate veil to establish jurisdiction over non-resident defendants. *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 306, 655 S.E.2d 446, 449 (2008) (holding that conclusory allegations concerning alter-ego liability or corporate veil piercing, without any other supporting evidence, cannot support exercising personal jurisdiction over a nonresident defendant); *see also Weisman*, 2014 NCBC LEXIS 41, at *17 (holding same).

51. As an initial matter, Plaintiff has neither alleged nor provided evidence that any GFY Defendant is a mere instrumentality of Dolven or Ryan. For example, Plaintiff has not alleged that GFY Defendants are inadequately capitalized, fail to follow corporate formalities, or do not maintain adequate corporate records,[7] or that Dolven is siphoning off funds from any GFY Defendants. Instead, Plaintiff points to evidence that Ryan is listed as a director, representative, or manager of the various GFY Defendants (ECF No. 318, at pp. 7–10); that Ryan, along with Timothy, Steven, and James created Dolven and GFY, and GFY is owned by Dolven (*Id*. at pp. 13–14); that the GFY Defendants are interrelated by their ownership structure (*Id*. at p. 14); and that Ryan has ultimate authority over, and is involved in directing certain operations of, GFY Defendants (*Id*. at pp. 14–17.) Plaintiff contends that this

---

[7] To the contrary, Plaintiff has filed with the Court a number of documents and records filed and/or maintained by the GFY Defendants that appear to demonstrate that they observe formalities, make separate corporate filings, and maintain appropriate corporate records. (*See, e.g.*, ECF Nos. 235.3–235.6; 305.3.)

evidence establishes that "Ryan . . . along with Dolven . . . [is] in full operational control of the GFY entities and, as such, his activities confer jurisdiction on the courts of North Carolina." (*Id*. at p. 14.)

52. Without more, the mere fact that Dolven is a parent or affiliate of GFY Defendants does not confer jurisdiction over the GFY Defendants in North Carolina. A court may not exercise general personal jurisdiction over a company simply because its director, shareholder, parent company, subsidiary, or affiliate operates in or is otherwise subject to general personal jurisdiction in a state. *See, e.g., Daimler*, 571 U.S. at 136 (concluding that "to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate [is] an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*." (citations omitted)); *see also Goodyear*, 564 U.S. at 929–30 (finding that there can be no general personal jurisdiction over foreign subsidiaries of a corporation based on contacts of parent corporation); *Speedway Motorsports Int'l Ltd. v. Bronwen Energy Trading, Ltd.*, 209 N.C. App. 474, 490, 707 S.E.2d 385, 395 (2011) (recognizing that a subsidiary cannot be subjected to personal jurisdiction in a forum in which a parent does business unless it has its own direct contacts or unless the two entities "are part of the same whole and were not acting independently").

53. Furthermore, despite Plaintiff's allegations regarding Ryan's control and management of the GFY Defendants, it has not provided any evidence that Ryan made any specific decisions for, or directed any specific conduct by, the GFY Defendants from North Carolina. On the other hand, GFY Defendants have provided

evidence that GFY and GFY Shanghai maintain offices, and have management and other employees responsible for their day-to-day operations located in China, and GFY LCV has facilities and management and other employees in El Salvador. (ECF No. 289.1, at ¶¶ 10, 11, 13, 15, 32, 33, 42, 44–48.)

54. Having thoroughly reviewed the evidence and arguments, the Court concludes that Plaintiff has failed to carry its burden of establishing that the Court may exercise personal jurisdiction over GFY, GFY Shanghai, or GFY LCV based on a veil-piercing or alter ego theory. Therefore, GFY Defendants' motion to dismiss Plaintiff's claims against GFY, GFY Shanghai, and GFY LCV for lack of personal jurisdiction over those parties should be GRANTED.

## CONCLUSION

55. In conclusion, the Plaintiff has carried its burden of establishing grounds for asserting personal jurisdiction over GFY Coop, but has failed to establish grounds for this Court to exercise jurisdiction over GFY, GFY LCV, or GFY Shanghai. Therefore, it is ORDERED that:

56. Plaintiff's Motions to Strike are DENIED;

57. GFY Defendants' Motion is GRANTED with respect to GFY, GFY LCV, and GFY Shanghai, and the claims against those Defendants are DISMISSED;

58. GFY Defendants' Motion is DENIED with respect to the claims against GFY Coop.

SO ORDERED, this the 14th day of November, 2018.


  /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases